## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | } | |
| | } | |
| vs. | } | Criminal No. 1:16CR00120-001 |
| | } | |
| WILSON A. OVERTON | } | The Hon. Liam O'Grady |
| | } | |
| Defendant, | } | Hearing Date: September 9, 2016 |

### Defendant's Position on Sentencing

Pursuant to 18 U.S.C. § 3553(a), Rule 32 of the *Federal Rules of Criminal Procedure,* and Section 6A1.3 of the advisory *United States Sentencing Guidelines,* the Defendant, Wilson Overton, by counsel, states that he has received and subsequently reviewed the Presentence Investigation Report ("PSR") prepared for the Court by Ms. Tracey M. White, United States Probation Officer.

The Defendant states that while he has no objections to the method used to calculate the advisory Sentencing Guidelines of 30 to 37 months, he respectfully requests that the Court consider the PSR only as an advisory tool and in the alternative to the proposed Guidelines, the Defendant is asking the Court to consider imposing a sentence that provides for a period of incarceration which makes clear to the defendant that his actions have consequences but is a punishment that does not side track the defendant's life for an extended period of time and creates an undue hardship for him to make his way back into society.

An overly lengthy period of incarceration will make it extremely hard for the defendant to find employment; start making payments as ordered by the court; remain involved in the lives of his two sons; become a better person and establishing for the court and for all those who support the defendant that Wilson Overton can and will turn this event around to be a positive learning experience.

The defendant believes that the recommendation arrived at by the calculations in the guidelines do not consider all of the factors that should be taken into account and as a result the recommendation of 30 to 37 months is excessive.

Respectfully the defendant hopes that upon the Courts review of this case, the Court's consideration of the defendants difficult upbringing, his relative lack of any real serious criminal conviction, the fact that the vast majority of his criminal past either resulted in dismissals or nolle prossed cases, that the few convictions that he has resulted in some type of deferred disposition or drug treatment, the fact that essentially the defendant has had no real period of prior incarceration and coupled with his full and unconditional acceptance of his responsibility here, this Court may too consider that the guidelines are excessive and impose a period of incarceration that is more appropriate.

## Brief Factual Background

On March 16, 2016 at approximately 1:00 am, Wilson Overton was driving home from his job at Tysons Corner after completing his shift. Mr. Wilson noticed a vehicle following him and moved to the right lane, assuming that the driver of the other vehicle wanted to pass him.

As Mr. Overton changed lanes he realized that the vehicle behind him was in fact a police cruiser and that the emergency lights had been activated. Mr. Overton pulled over and stopped his vehicle.

United States Park Police Sergeant Daniels approached Mr. Overton and after securing the defendant's drivers license returned to his cruiser to check the defendant's license status.

A short time later Officer Harper, also a United States Park Police Officer, arrived as a backup, and positioned himself near the driver side of the defendant's vehicle. While there had been professional and courteous conversation between the defendant and Sgt. Daniels, there was little to no communication between Officer Harper and the defendant.

Sgt. Daniels returned and ordered Mr. Overton out of the vehicle. Mr. Overton inquired what was wrong and the defendant heard Officer Harper tell the defendant that if he did not get out of the vehicle then Officer Harper would pull out his taser gun and shoot the defendant with it.

The defendant panicked and without giving much thought to the next course of action he was about to undertake, he made the volitional act of accelerating and pulled away from the two officers.

Unbeknownst to the defendant, as he pulled away in his vehicle, the driver side mirror struck the taser holster that was attached to Officer Harpers service belt, damaging the equipment but fortunately not injuring the officer.[1]

While it was the defendant's misguided intent to flee from the traffic stop, he never intended to strike the officer or the taser holster and in fact he did not know he made contact with the officer as he pulled away.

After the defendant drove off, a pursuit ensued and the defendant lost control of his car striking an overpass. The defendant fled on foot into a wooded area, with Sgt. Daniels and Officer Harper giving chase. After the officers ran past the defendant, he ran back out to the highway and made the second worse decision of his life, he found a police cruiser with the engine running, keys in the ignition, unoccupied, in the middle of the parkway. The defendant got in and drove away. A short while later Mr. Overton lost control of the police cruiser and struck another overpass. Mr. Overton exited the police vehicle and fled. Eventually Mr. Overton was able to escape.

---

[1] The defendant's attorney spoke with Sgt. Daniels in preliminary hearing and he indicated that he was not injured. Further Sgt. Daniels stated that he did not believe Officer Harper suffered any injury and as far as he knew only the taser and holster was damaged. The defendant did request medical bills so he could reimburse the officer but no bills were produced.

The defendant's car was towed and upon an inventory search of the defendant's vehicle, a firearm was located in the front portion of the vehicle, however it was soon learned that it was not the defendants nor related to any criminal offense.

An investigation by the police revealed that the defendant and the legal and registered owner of the firearm are good friends. Further it was determined that earlier in the evening, the owner of the firearm met with the defendant for an after work drink and wanted to show the defendant his gun because it he had recently purchased it. The gun owner retrieved the gun from his own vehicle and afterwards the two sat in the defendant's car to admire the new weapon. When the owner got out of the defendant's car, he forgot to retrieve his handgun and as a result it was in the vehicle when the police searched it.

Coincidently Mr. Overton had called the gun owner to let him know that the gun was in the car and that the owner should report to the Virginia police the events that led to the gun being left behind in the car. The gun owner filed a report with Falls Church City Police.[2]

Of importance to note is that despite the officers initial belief that the car may contain marijuana, there were no narcotics of any type located in the vehicle.

---

[2]Defense counsel has spoken with AUSA Welsh, USP Police and Falls Church City Police and all have indicated that no criminal offense has been committed by either the defendant nor the legal gun owner and that the gun may be retrieved by the owner.

The following day on March 17, 2016, the defendant called this defense counsel and asked him to arrange a means for the defendant to turn himself in to the police. Counsel contacted both the US Park Police as well as the US Attorney's Office and although the process of surrendering consumed a period of days, Mr. Overton eventually did voluntarily appear at the police station, as instructed and was taken into custody.

After his arrest, the defendant fully cooperated with the police as it relates to the events of this arrest; made a full statement of all facts and provided whatever information he could when questioned. Further, the defendant was asked for help on an open homicide case from October of 2015. Although he informed the detectives that while he was familiar with the neighborhood wherein the killing occurred, he had no knowledge or information about the case.[3]

## Legal Argument

The Supreme Court of the United States has reiterated in a long line of cases that Sentencing Guidelines are advisory and are to be considered as just one of a number of factors, which go towards finding a proper sentence.

"The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed reasonable." Nelson v. United States,* 129 S. Ct.

---

[3] The defendant's attorney received information from AUSA Sean Welsh concerning the murder and then left 2 or 3 phone messages for the lead detective to inform him that the defendant's uncle, who was far more "street wise" may be able to assist in the case if it would help the police find the killer. Unfortunately and for unknown reasons, the detective never returned any of the phone messages or offers to close the case. As of this writing, it is believed that the murder case remains open.

892 (2009). Stated another way, Courts should not simply look to the Guidelines and assume they are correct and proper and then impose the recommended sentence. Courts have a duty to weigh and consider all relevant factors, look to the Guidelines as an advisory tool then impose a sentence that is fair and just. The Supreme Court has held the Guidelines should not be a substitute for an independent analysis and decision by the court to find a sentence that fits the crime and character of the criminal.

## I. The Statutes to Which the Defendant Pled Permit a Departure

The defendant pled guilty to Assault on a Federal Law Enforcement Officer, 18 U.S.C. §111(a)(1) as well as 18 U.S.C. §13, assimilation Va. Code §18.2-102, Unauthorized Use of a Vehicle.

In promulgating 18 U.S.C. §111(a)(1) Congress provided that upon a conviction a defendant may be assessed only a fine or alternately sentenced to jail or both a fine and jail.  The maximum time the statute provides is 8 years incarceration and the maximum fine is $250,000.

A brief study of the legislative history finds that while Congress wanted to provide a federal statute that protects law enforcement from being assaulted, Congress also wanted the federal courts to have the power and authority to consider the defendants action, the extent of the injury to the officer and the circumstances which led to the assault. Congress then envisioned that the Court would fashion an appropriate sentence based on those facts.

It seems that the statute anticipates that an assault which results in an injury to the law enforcement officer should result in substantial jail time, whereas if the assault is incidental to the act of fleeing as here and is so minimal that the officer is not hurt and only his equipment is damaged then the Court may consider a minimal amount of incarceration or even probation.

It is of interest to note that in the state courts of Virginia, a defendant who has been convicted of assault on a police officer is subject to a 6 month minimum mandatory sentence. The defendant respectfully suggests that a sentence structured along those same lines may be more appropriate in this case, given the previously discussed elements of the assault and how it occurred.

The second offense, to which the defendant pled guilty, was Unauthorized Use of An Automobile (UUV). Of course the factor that makes this case somewhat unique is that the vehicle in question was a police cruiser, which was wrecked and as a result has been totaled out by the insurance company.

Under the federal scheme there is no specific statute dealing with UUV, thus this offense has been assimilated through 18 U.S.C. §13 and incorporates Va. Statute §18.2-102, which is punished as a Class 6 felony. The punishment for this offense can range from 1 to 5 years in the state penitentiary or up to no more than 12 months in jail with a fine not to exceed $2,500.00, either or both (fine and jail).

If this defendant had made use a vehicle which was not a police cruiser, it is likely that his actions, while unlawful, would not necessarily raise the risk of a potentially more severe punishment because of the type of vehicle taken.

The defendant and counsel discussed at length what thoughts were going through his head when he decided to take the cruiser. The defendant described his mind set as an out of body experience. He knew that it was a horrible decision but it was as though he was on automatic overdrive and he acted before he considered fully what his actions amounted to. Unfortunately the defendant does understand and admits that regardless of how he mentally processed the events unfolding in front of him, he was wrong, he accepts responsibility and he accepts fully what the Court decides is a fair sentence.

Further, while the defendant feels that a 6 month mandatory sentence for the assault, given the lack of injury and lack of intent to assault is appropriate, he has little to offer to mitigate his actions with respect to the cruiser, other than to ask the Court to consider a showing of leniency and opt to sentence the defendant to a 12 month or less sentence as the statute permits. As with the other charge, the defendant realizes that he runs the risk of being assessed a fine for his actions, but hopes that the fine is not so excessive that it adds considerably to the self created burden the defendant has to pay for the damage to the cruiser.

## II. Factors to Consider in Determining a Proper Sentence

As the pre-sentence report reflects Mr. Overton has not had an easy upbringing. The child of a murdered drug dealer and a mother who was addicted to crack cocaine, Mr. Overton was essentially born to failure without having much say as to what path his life should take.

However even with this destructive childhood, his criminal past is relatively minor as an adult. In 2009 his cocaine arrest in Prince Georges County was handled as a type of deferred disposition where the court stayed imposition of any punishment and the defendant completed a treatment/education program.  In 2012 the defendant had another marijuana arrest in DC and once again handled as a type of diversion program and charges were dismissed after successful completion of the required programs. Finally in 2015 he was arrested in Fairfax with possession of marijuana where he paid a fine and costs and additionally had his drivers licensed suspended.[4]

There are a number of traffic related issues and some other criminal matters all which appear to have been dismissed or nolle prossed. Finally Mr. Overton has had to deal with some anger issues and family matters, not all of his own doing and as the report indicates he is trying to get those aspects of his life under control.

_____

[4] As the Court is most likely aware since DC has legalized marijuana, the incidents of people coming from DC, where it is not unlawful to possess, and then entering into Va. and arrested with small amounts of the drug is increasing. While this is no excuse it has created somewhat of a conundrum for those who "forget" that they should not leave DC with marijuana.

During this most recent incarceration, Mr. Overton has taken and completed college courses and plans to continue this path upon his release. He has been appointed as a trustee in the jail, kitchen chef and has been put in positions of added responsibility by the Alexandria Sheriffs Office. There are a few letters of support attached as an addendum (A) for the Courts consideration.

The Court should also note that Mr. Overton instructed his counsel to contact the two police officers and offer his sincere apology for his actions. That task was completed on the day of the defendant's preliminary hearing when counsel relayed the apology to Sgt. Daniels. Officer Harper was not present however Sgt. Daniels indicated he would pass the apology on to the other officer.

Despite his rocky family history he still has relatives that love him and support him and are looking forward to working to help Wilson get out of jail, be reunited with his children and wife and pursue the life that he desires: for the first time in his life to be a normal, productive member of society.

It is the defendant's hope that this Court, when fashioning a sentence will consider the defendant's rough childhood and how that affected his life, his personal struggles he has faced often without parental guidance, the true lack of any substantial criminal history which reflect convictions for serious unlawful behavior which has resulted in incarceration and finally the nature of the offense, the transferred intent and lack of injury to the officer.

The defendant has accepted and realizes that only he is responsible for the events that have led him to this point in his life. He hopes that this Court will recognize that he has wanted to remain in jail for near 6 months in order to show that he accepts his responsibility for his actions. Further, the defendant hopes that this Court will find that incarceration for the period of time suggested by the guidelines may perhaps be a little more than what this case requires. The defendant asks that this Court to consider departing from the guidelines and fashion a sentence that provides for a 6 month mandatory sentence for the assault and a jail sentence of less 12 months for the police cruiser.

This is Mr. Overton's first real extended stay in any correctional institution and he has realized rather quickly that he does not like it nor does he ever want to return.

## Conclusion

Mr. Overton has committed 2 serious offenses that placed others in danger as well as himself and his actions were an affront to the very social fabric that keeps us safe, our law enforcement community. His life has not been easy but he does not offer this as any excuse for what he did. He made certain decisions on March 16, 2016 and he must live with those consequences and he accepts full responsibility for his actions. It is the defendant's position that the guidelines, when weighed against the events and facts of that night are perhaps a little excessive and Mr. Overton

respectfully asks this Court to consider leniency in the imposition of his

sentence.

Respectfully Submitted By
Counsel For the Defendant:


_____/s/_____
Charlie FitzGerald, Attorney
VSB #83058
2007 N15th Street
Suite B-5
Arlington, Va. 22201
Phone:       (703) 401 2766
Fax:         (703) 522 2109
Email: cjfitzgeraldatlaw@gmail.com

## ADDENDUM A



William G. Truesdale Adult Detention Center
2001 Mill Road
Alexandria, VA 22314

July 20, 2016

Honorable Liam O'Grady
Judge
United States District Court Eastern District of Virginia
Albert V. Bryan U.S. Courthouse
401 Courthouse Square
Alexandria, VA 22314

RE: Wilson Overton

Honorable Liam O'Grady:

Wilson Overton has been participating in the Open Roads college program at the William G. Truesdale Adult Detention Center in Alexandria, VA. This program offers college courses facilitated by Northern Virginia Community College (NVCC).

Mr. Overton has completed SDV 100- College Success Skills, a one credit course taught in an 8-week session that met once a week for 1 hour and 40 minutes. This course is designed to assist students in making a successful transition to college. It provides students with the academic tools for success and teaches the skills of self-management and self-responsibility that relate to being successful both in and out of the classroom. He completed the course on July 10, 2016, receiving an A in the class.

Please feel free to contact me if you have further questions.

Sincerely,

Krista M Sofonia, M.A., NCC
NVCC Adjunct/Inmate Education Coordinator
Phone: 703-746-5107
Email: krista.sofonia@alexandriava.gov

Alexandria Campus
5000 Dawes Avenue, Alexandria, VA  22311-5097
phone: 703-845-6200
www.nvcc.edu

Dear Judge Liam O'Grady:

My Name is Davina Lloyd, I am Wilson Overton's Fiancé and we have one child together. I have known Mr. Overton for 7 years, and we live NE of Washington, DC. Mr. Overton has always been the caring type who would do for others before he would do for himself. He is very family oriented. He was physically active in both of his son's life, made sure they had everything they needed and was just simply always there when I needed him. Even, while incarcerated Mr. Overton has made sure his kids got what they needed and more, I think that's commendable considering the circumstances.

Personally, I have notice a change in Mr. Overton. Through numerous phone conversations and visits; he's definitely focus on life and approaches situations differently than before. I can tell that he's taking his time seriously. Though, I wouldn't say that Mr. Overton is not a productive law-abiding citizen of society because he in fact was. He was involved religiously. The community speaks highly of him, we have a lot of elderly neighbors on the block and he helps them out. His family… such as his mom, siblings, aunts etc. relies on him for a lot of things; whether that is advice, reminiscing, problem solving, or just to see how he's doing.

In the middle of March, after getting off from work, late at night is when Mr. Overton was pulled over by police; he was in fear of his safety. The Officer threatened Mr. Overton's life which was why Mr. Overton responded the way in which he did. There is no history of Mr. Overton having negative experiences with the police, this situation was very uncommon and all he was trying to do was save his own life. This does not justify the 2 counts that he is facing now. Mr. Overton does not have a bad criminal history of repeated defiant behaviors. I do not feel as though he should receive the max penalty of 5 years.

While being incarcerated Mr. Overton has no write ups, he's never gotten into any trouble with other inmates, correctional officer, nor staff. He instead, volunteered to be transferred to another unit, so that he could work. In addition to, as a trustee to the detention center he's not a high-risk inmate at all, in fact he's trustworthy. Subsequently, if we think about his negatives and positives, the positives outweigh the negative dramatically. Mr. Overton sentencing should be time served along with 4-6 months jail time, with 2-3 years of probation, on the condition that he partake in healthy counseling services, and involve himself with community based organizations. He has been rehabilitated and I'm for sure you won't have to worry about recidivism.

Thank you Judge, for taking the time out your day to read my letter on behalf of Mr. Wilson Overton.

Sincerely,

Davina Lloyd

To the honorable Liam O'Grady:


I'm writing on behalf of my neighbor and
friend Wilson Overton, your honor I'm not
writing to ask for the charges to be dropped
because I believe in you reap what you sow
but I am asking for leniency. Wilson is not
perfect but I've seen him grow as a man.
I've known Wilson for at least 4 years he
helps me with the older neighbors and we
have a lot of older neighbors. We talk about
work, we talk about trying to become better
in life and we talk about our kids he has
a beautiful son. I didn't want to write a long
3 page letter your Honor I just wanted to ask
that you help my friend with any programs that
you think will help him become the man that I
know he can be. I know becoming a better person
starts with the individual and you have to want
to be a better person and I think he does he
just needs someone to care.

Thank you for taking the time out to read
my letter your Honor.
Sincerely yours
Anthony Maree

## Certificate of Service

I hereby certify that on September 2, 2016 I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will then

send a notification of such filing (NEF) to the following:

> Mr. Sean Welsh
> Special Assistant United States Attorney
> United States Attorney's Office
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
> Phone:  (703)-299-3700
> Fax:   (703)-299-3980
> Sean.m.welsh@usdoj.gov

> By:_____/s/_____
> Charlie FitzGerald, Attorney
> VSB #83058
> 2007 N15th Street
> Suite B-5
> Arlington, Va. 22201
> Phone:(703) 401 2766
> Fax:   (703) 522 2109
> Email: cjfitzgeraldatlaw@gmail.com